IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ALEXIS BOOKARD | : | CIVIL ACTION |
| --- | --- | --- |
| | : | |
| v. | : | No. 18-2424 |
| | : | |
| THE ESTEE LAUDER COMPANIES, INC., et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**  **March 10, 2020**

Defendants/Third-Party Plaintiffs Northtec, LLC and The Estée Lauder Companies, Inc. (collectively, Northtec) seek indemnity from Third-Party Defendant Manpower, Inc. for claims asserted against Northtec by Plaintiff Alexis Bookard, a Manpower employee. Bookard was seriously injured in a workplace accident at a Northtec distribution facility where she had been assigned to work by Manpower, a temporary staffing company. After the accident, Bookard sued Northtec for negligence. Northtec later joined Manpower, seeking contractual defense and indemnity pursuant to the indemnification provision of a Staffing Services Agreement between the parties. Manpower then asserted a counterclaim against Northtec pursuant to the same indemnification provision. Manpower has moved for summary judgment on Northtec's claims, arguing it is immune from third-party indemnity claims arising from its employees' work-related injuries under the Pennsylvania Workers' Compensation Act. Although this statutory immunity may be waived, Manpower argues the indemnification provision lacks the specificity necessary to waive its immunity under Pennsylvania law. Northtec disputes Manpower's interpretation of the indemnification provision. It also argues the Pennsylvania Workers' Compensation Act is inapplicable because whether Manpower waived its immunity in the indemnification provision is governed by New York law based on the choice of law provision in the Staffing Services

Agreement. The parties agree the indemnification provision waives Manpower's immunity under the New York Workers' Compensation Law.

As discussed below, the Court agrees with Manpower that the indemnification provision is insufficient to waive Manpower's immunity under the Pennsylvania Workers' Compensation Act. Thus, the outcome turns on whether the immunity issue is governed by New York or Pennsylvania law. Because the Court finds Pennsylvania law governs, Manpower's motion for summary judgment will be granted. Northtec's motion for summary judgment as to Manpower's counterclaim will be dismissed as moot.

**FACTS[1]**

In 2006, Manpower entered into a Staffing Services Agreement (SSA) with an entity called ELC Management LLC. Northtec Ex. E (SSA) 1. For purposes of the instant motions, the parties do not dispute that ELC is affiliated with Northtec and that the relevant terms of the SSA are binding on Northtec. *See* Northtec's Statement of Undisputed Facts ¶¶ 6-7; Manpower's Resp. to Northtec's Statement of Undisputed Facts ¶¶ 6-7.[2]

Pursuant to the SSA, Manpower assigns employees to perform various types of work for Northtec at specified locations. SSA § 1(a). The SSA outlines the parties' respective areas of responsibility for these assigned employees. Manpower's responsibilities include providing employees with "any workers compensation coverage required by applicable law." *Id.* Northtec's

---

[1] Except where specifically noted to the contrary, the facts are undisputed.

[2] Manpower is a Wisconsin corporation with its principal place of business in Wisconsin. SSA at 1. ELC is a Delaware company with its principal place of business in New York. *Id.* Northtec is a limited liability company that operates a distribution center in Pennsylvania. Northtec's members are also limited liability companies—Clinique Services LLC and ELC Beauty LLC—whose members are The Estée Lauder Companies, Inc., and Estée Lauder Inc., both of which are Delaware corporations with a principal place of business in New York. Northtec's Third-Party Compl. ¶ 4.

responsibilities include "direct[ing] and control[ling] the work, premises, processes and systems to be performed by [a]ssigned [e]mployees"; providing certain training to assigned employees; and providing assigned employees with "a safe worksite" and with "information, training and safety equipment with respect to any hazardous substances or conditions to which [a]ssigned [e]mployees may be exposed at the worksite." *Id.* §§ 2(a), (g), 3(f).

The SSA includes a detailed indemnification provision, which provides, in relevant part, as follows:

> a. To the extent permitted by law, each party shall indemnify, defend, and hold harmless the other party and its parents, subsidiaries and affiliates, and its and their respective officers, directors, employees, agents, and other representatives from and against its proportionate share of any and all claims, demands, losses, liabilities, damages, expenses (including reasonable attorney fees) and causes of action (hereinafter "Claims") for: (I) bodily injury to, or death of, any person, including without limitation the employees, agents, contractors, licensees, and invitees of the party being indemnified, unless such injury or death is covered by indemnified party's workers compensation policy, (II) damage to, or destruction of, any property, whether owned by the party being indemnified or otherwise, or (III) the failure of the indemnifying party to comply with the provisions of this Agreement, but in each of the above three cases, only to the extent such Claims are caused by or result from the negligence, gross negligence, recklessness or willful misconduct of the indemnifying party or its parents, subsidiaries[,] . . . officers, employees, agents, contractors, licensees or invitees in the performance of Services or obligations defined in this Agreement.
>
> b. To the extent permitted by law, Manpower further agrees to defend, indemnify and hold harmless [ELC] and its parents, subsidiaries and affiliates, and its and their respective officers, directors, employees, agents, and other representatives ("Client Indemnitees") from and against any and all Claims against [ELC] in which liability is premised on [ELC] being the employer, joint employer, or co-employer of any of the Assigned Employees; provided, however, that this indemnification obligation shall not apply with respect to claims premised upon any offer or promise made by [ELC] to an Assigned Employee regarding increased benefits or compensation.

*Id.* § 7. The SSA also includes a choice of law provision, which states the SSA "will be governed by and construed in accordance with the laws of the State of New York, without reference to any conflicts of law principles thereof." *Id.* § 12(*l*).

3

In March 2015, pursuant to the SSA, Manpower hired Bookard and assigned her to work for Northtec at its distribution facility in Bristol, Pennsylvania. *See* Manpower Ex. B (Paquette Aff.) ¶¶ 3-6. Around the time Bookard was hired, she received training utilizing a PowerPoint slide presentation entitled, "Manpower Associates Safety Training," which was branded on each page with both the Manpower and Northtec logos. *See* Northtec Ex. A; Manpower Resp. Ex. B (Bookard Dep.) 139:10–142:16. The slide presentation covered a number of safety issues in different areas of the facility, including the "dunnage area" where Bookard was later injured while using a paper machine known as the Pack Tiger. *See* Northtec Ex. A, at EL-NORTHTEC 0058-0059. The presentation instructed, with respect to the paper machine: "Don't open the front guard of the machine; if the paper gets stuck contact a mechanic[] and/or supervisor immediately." *Id.* at EL-NORTHTEC 0059.

Bookard was initially assigned to the facility's order handler department where the only equipment she used was a scanner. Bookard Dep. 26:5–26:18; 35:18–36:13. Bookard was later transferred to a different building where she began using additional equipment, eventually including the Pack Tiger. *Id.* at 37:7–40:7, 42:15–47:1. At her deposition, Bookard testified that Manpower employees showed her how to use the Pack Tiger. *Id.* at 47:21–48:15. No one from Northtec trained her on the use of the machine. *Id.* at 48:16–48:19. Manpower employees showed Bookard how to clear a paper jam by unplugging the machine and pulling the paper out. *Id.* at 51:24–53:4.

The accident giving rise to this lawsuit occurred on May 21, 2016, when Bookard attempted to clear a paper jam in the Paper Tiger without unplugging it. Bookard reached her arm into the machine while it was still on and seriously injured her right hand, severing three fingers. *Id.* at 79:14–80:10, 99:11–100:23, 142:23–143:17. Bookard's injuries were covered by

Manpower's workers' compensation policy, and Bookard received benefits under that policy, pursuant to the Pennsylvania Workers' Compensation Act, as a result of the injuries. Paquette Aff. ¶¶ 7–8.

In March and April 2018, Bookard filed two personal injury actions in state court, one against Sealed Air Corporation, the manufacturer of the Paper Tiger, and the other against Northtec. Bookard asserted products liability claims against Sealed Air. The claims against Northtec alleged the accident and resulting damages were caused by Northtec's negligence in failing to provide a safe work environment and adequate training, warnings, and oversight with respect to the operation of the Pack Tiger at the facility. Both actions were removed to federal court and consolidated.

After taking Bookard's deposition in the consolidated action in January 2019, Northtec tendered the defense of the matter to Manpower and its insurers pursuant to the SSA. Manpower declined to provide a defense, so in Mach 2019, Northtec brought a Third-Party Complaint against Manpower, asserting claims for contractual defense and indemnity and for breach of contract (based on Manpower's failure to promptly provide Northtec a defense). In response, Manpower asserted a counterclaim for contractual indemnification against Northtec. Manpower contends that, contrary to Northtec's assertions, Bookard's bodily injury claims resulted from Northtec's breach of its contractual duties under the SSA to provide training and a safe environment, and thus from Northtec's own negligence, gross negligence, or recklessness. Manpower alleges Northtec is "liable over to [Manpower] for the amount of any verdict or judgment recovered by [Bookard] against [Northtec] payable by Manpower." Manpower's Countercl. ¶ 7.

In April 2019, the parties notified the Court that Bookard's claims against Northtec and Sealed Air had settled, leaving only the indemnity claims between Northtec and Manpower for

5

disposition. After a period of discovery, Northtec and Manpower filed cross-motions for summary judgment. Manpower seeks summary judgment as to Northtec's contractual indemnity claims. Northtec seeks summary judgment as to Manpower's counterclaim. The Court heard argument on the motions on August 20, 2019.

**DISCUSSION**

A motion for summary judgment shall be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted). To defeat summary judgment, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (alteration in original) (citation and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Where, as here, cross-motions for summary judgment are filed, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v.*

*Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (alteration omitted) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998)).

**A. Manpower's Motion**

Manpower moves for summary judgment on Northtec's indemnity claims, arguing that, as an employer, it is immune from third-party indemnity claims for damages arising from its employees' workplace injuries under the Pennsylvania Workers' Compensation Act. Because the Court agrees with Manpower both that it is immune from Northtec's claims under Pennsylvania law and that Pennsylvania law governs the immunity issue, Manpower's motion will be granted.

Manpower claims immunity pursuant to § 303(b) of the Pennsylvania Worker's Compensation Act, which provides, in relevant part, that an employer "shall not be liable to a third party for damages, contribution, or indemnity [for injury or death to an employee] in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action." *See* 77 Pa. Stat. § 481(b). Although the SSA contains an indemnification provision, Manpower argues that provision lacks the specificity necessary to waive its statutory immunity under Pennsylvania law.

Northtec disputes that the SSA is insufficient to waive Manpower's statutory immunity under Pennsylvania law. But Northtec also argues the Pennsylvania Workers' Compensation Act is inapplicable because the SSA states it is to be governed by and construed in accordance with New York law, "without reference to any conflicts of law principles thereof." SSA § 12(*l*). Like Pennsylvania law, New York law protects employers from third-party indemnity claims for employees' on-the-job injuries, subject to certain exceptions. *See* N.Y. Workers' Comp. Law § 11.

7

Similar to Pennsylvania law, the New York Workers' Compensation Law permits third-party indemnification claims where the claim is "based upon a provision in a written contract entered into prior to the accident or occurrence by which the employer had expressly agreed to . . . indemnification of the claimant or person asserting the cause of action for the type of loss suffered."[3] *Id.* However, this contractual exception to immunity is somewhat broader than its Pennsylvania counterpart.

For a written indemnity agreement to waive an employer's immunity under the Pennsylvania statute, "[t]he intent to indemnify against claims by employees of the alleged indemnitor . . . must clearly appear from the terms of the agreement." *Bester v. Essex Crane Rental Corp.*, 619 A.2d 304, 307 (Pa. Super. Ct. 1993) (citation omitted). The employer's agreement to indemnify the third party must be "made to apply specifically to claims by its employees." *Hackman v. Moyer Packing*, 621 A.2d 166, 168 (Pa. Super. Ct. 1993). The same level of specificity is not required under the New York statute. *See Rodrigues v. N & S Bldg. Contractors, Inc.*, 839 N.E.2d 357, 360 (N.Y. 2005) (noting an indemnification provision need not "specify the

---

[3] The New York Workers' Compensation Law also permits third-party indemnity claims against an employer if the third party "proves through competent medical evidence that [the] employee has sustained a 'grave injury,'" a term defined in the statute to include the "loss of multiple fingers." N.Y. Workers' Comp. Law § 11. The grave injury exception is independent of the exception for express indemnity agreements. *See Flores v. Lower E. Side Serv. Ctr., Inc.*, 828 N.E.2d 593, 596 (N.Y. 2005) (noting that in adopting the grave injury standard, the Legislature "chose not to abrogate 'the power of a third party to recover under express contractual obligations between the employer and the third party'" (quoting *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 696 N.E.2d 978, 979 (N.Y 1998))). "Where a 'grave injury' results, a primary defendant may commence a third-party action against the injured plaintiff[']s employer for common-law indemnification and/or contribution." *Fleming v. Graham*, 886 N.E.2d 769, 772 (N.Y. 2008). Although Bookard may have suffered a grave injury under the statute, this exception does not appear to apply here, as Northtec seeks only contractual indemnity, and not common law indemnity. *See* Northtec's Third-Party Compl. ¶¶ 22-33 (asserting claims pursuant to the indemnity provision of the SSA).

8

sites, persons and the types of losses covered" to be enforceable under the New York Workers' Compensation Law). "So long as a written indemnification provision encompasses an agreement to indemnify the person asserting the indemnification claim for the type of loss suffered, it meets the requirement of the [New York] statute." *Id.*

Whether the immunity issue is governed by New York or Pennsylvania law makes a difference in the outcome of this case. Northtec argues—and Manpower does not dispute—that Manpower would not be entitled to immunity from Northtec's contractual indemnity claims under New York law. *See* Manpower's Mot. for Summ. J. ¶¶ 18–19; Manpower's Mem. in Supp. of Mot. for Summ. J. 4–5; Northtec's Resp. to Manpower's Mot. for Summ. J. 6. As discussed below, however, Manpower is entitled to immunity if Pennsylvania law applies. The Court must therefore resolve the choice of law issue.

Because subject matter jurisdiction in this case is based on the diversity statute, 28 U.S.C. § 1332(a), this Court "must apply the choice of law rules of the forum state," here, Pennsylvania. *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). The starting point in the Court's analysis is the SSA's choice of law clause, which provides that the SSA "will be governed by and construed in accordance with the laws of the State of New York, without reference to any conflicts of law principles thereof."[4] SSA § 12(*l*). "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits*,

---

[4] The fact that the choice of law clause provides that the SSA will be governed by New York law without reference to *New York* conflicts of law principles does not prevent the Court from undertaking a choice of law analysis under *Pennsylvania* law. *Cf. Cook v. Gen. Nutrition Corp.*, 749 F. App'x 126, 128–30 (3d Cir. 2018) (applying § 187 of the Restatement (Second) of Conflicts of Law, adopted in Pennsylvania, to decide whether to honor a Pennsylvania choice of law clause, notwithstanding that the clause provided for the application of Pennsylvania law "without regard to its conflict of law provisions").

40 F.3d at 55 (citation omitted). The Third Circuit has noted that Pennsylvania courts have adopted § 187 of the Restatement (Second) of Conflict of Laws. *Id.* Under that provision, a choice of law clause will be enforced:

> unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187.

The first exception is not implicated here. The fact that ELC, one of the signatories to the SSA, is headquartered in New York is a sufficient basis for the parties' selection of New York law. *See Kruzits*, 40 F.3d at 56 (holding Illinois had "a substantial relationship to the parties" to a lease agreement containing an Illinois choice of law clause where the lessor was headquartered in Illinois). Indeed, Manpower concedes as much. *See* Manpower's Reply 2 n.1.

As to the second exception, the Court is persuaded Pennsylvania has a materially greater interest in determining the immunity issue, application of New York law would be contrary to a fundamental policy of Pennsylvania, and Pennsylvania law would apply in the absence of the SSA's choice of law clause. The Court therefore will not enforce the SSA's choice of law provision and will instead apply Pennsylvania law to determine the effect of the SSA's indemnification provision.

The Pennsylvania Supreme Court has recognized that Pennsylvania has a fundamental policy interest in applying its Workers' Compensation Act to in-state injuries. *See McIlvaine Trucking, Inc. v. Workers' Comp. Appeal Bd. (States)*, 810 A.2d 1280, 1286 (Pa. 2002); *see also* 77 Pa. Cons. Stat. § 1 (providing the Pennsylvania Workers' Compensation Act "shall apply to all injuries occurring within this Commonwealth"). In *McIlvaine*, the Supreme Court relied on this

10

policy interest in declining to enforce a choice of law provision in an employment agreement whereby the employee agreed to be bound by the workers' compensation laws of West Virginia in the event of work-related injury. *See* 810 A.2d at 1286. The employer argued the choice of law provision precluded the employee from pursuing a workers' compensation claim in Pennsylvania for on-the-job injuries sustained within the state. *Id.* at 1281. Although recognizing that "courts do not lightly override private contractual undertakings," the Supreme Court held the choice of law provision was unenforceable because it offended Pennsylvania public policy "as reflected, *inter alia*, in express legislative provisions such as Section 101's directive that the Act applies to in-state injuries." *Id.* at 1286.

Applying *McIlvaine*, two federal district courts in Pennsylvania have declined to enforce choice of law clauses with respect to immunity issues like the one presented here. In *Finney v. CSX Transportation, Inc.*, for example, a driver injured on the job in a motor vehicle accident in Pennsylvania sued a third party for negligence, and the third party sought indemnity under its contract with the driver's employer. No. 09-3040, 2009 WL 3719382, at *1 (E.D. Pa. Nov. 5, 2009). The contract included a Florida choice of law provision. *Id.* As in this case, the indemnification provision lacked the specificity necessary to waive the employer's immunity from third-party indemnity actions under the Pennsylvania Workers' Compensation Act, but was sufficient under Florida law. *Id.* at *3. Relying on *McIlvaine*, the district court held that applying Florida law would be contrary to Pennsylvania's public policy because Florida law conflicted with the Pennsylvania's Workers' Compensation Act's "express application to all workers injured in Pennsylvania." *Id.* The court also emphasized Pennsylvania's "materially greater interest in protecting workers within its boundaries." *Id.* at *2.

11

Another court recently reached the same conclusion on similar facts in *Jones v. Swepi L.P.*, No. 19-50, 2020 WL 241009 (W.D. Pa. Jan. 16, 2020). In that case, the estate of an employee who died in workplace accident in Pennsylvania brought a wrongful death action against the company that sold to the employer equipment that allegedly contributed to the employee's death. *Id.* at *1. The equipment seller then sought indemnification pursuant to its contract with the employer, which included a Texas choice of law clause. *Id.* Texas law, however, did not require the same degree of specificity as Pennsylvania law for an indemnification provision to waive an employer's immunity from third-party indemnity claims under the state's workers' compensation statute. *Id.* at *3. Citing *McIlvaine* and *Finney*, the court declined to apply Texas law, finding that because the employee died in a workplace accident in Pennsylvania, the choice of law provision "conflict[e]d with Pennsylvania's fundamental public policy codified in its Workers' Compensation Act." *Id.* at *4.

The same is true here. The claims for which Northtec seeks indemnity were brought by a Pennsylvania resident who was injured on the job at a Pennsylvania worksite and received workers' compensation benefits under Manpower's workers' compensation policy pursuant to the Pennsylvania Workers' Compensation Act. Given the differences between Pennsylvania and New York law regarding the level of specificity required for a written contract to waive an employer's statutory immunity from third-party indemnity claims, application of New York law would be contrary to Pennsylvania's fundamental policy interest in applying its Workers' Compensation Act to in-state injuries.

Without addressing *McIlvaine* and *Finney* on the merits, Northtec argues the choice of law clause should be honored here because New York has a substantial interest in determining the enforceability of an indemnification provision in an agreement that provides for application of

12

New York law, where one of the parties to the agreement is headquartered in New York and the parties conduct business on a national basis. Northtec relies primarily on *Coface Collections North America, Inc. v. Newton*, a non-precedential opinion in which the Third Circuit Court of Appeals addressed a dispute regarding the enforceability of a non-compete provision in an asset purchase agreement with a Delaware choice of law clause. 430 F. App'x 162 (3d Cir. 2011). Applying the same Restatement provision at issue in this case, the court held the dispute was governed by Delaware law. *Id.* at 168. The court rejected the defendant's argument that Louisiana law applied, finding Louisiana did not have a materially greater interest than Delaware in determining the effect of the non-compete clause. *Id.* The court recognized Louisiana had a substantial interest in the issue because the defendant was a Louisiana citizen, signed the asset purchase agreement in Louisiana, and was operating his competing business there. *Id.* But it found Louisiana's interest was insufficient to overcome Delaware's "substantial interest in enforcing [a] voluntarily negotiated contract clause that explicitly designates Delaware law to govern," where the plaintiff was a national company incorporated in Delaware. *Id.* Notably, a Delaware statute provided that inclusion of a Delaware choice of law provision in a contract between parties subject to the jurisdiction of the Delaware courts "shall conclusively be presumed to be a significant, material and reasonable relationship with this State and shall be enforced whether or not there are other relationships with this State." *Id.* at 167 (quoting Del. Code Ann. tit. 6, § 2708(a)).

Even assuming New York's interest in determining the enforceability of the indemnification provision in this case is similar to the interest ascribed to Delaware in *Coface*, the Court is persuaded Pennsylvania's interest is materially greater, given that Bookard was injured on the job in Pennsylvania and Manpower, through its insurer, provided workers' compensation benefits pursuant to the Pennsylvania Workers' Compensation Act. The immunity conferred upon

13

an employer by the Act is a fundamental component of the workers' compensation system. Immunity is "the historical quid pro quo that employers received in return for being subjected to a statutory, no-fault system of compensation for worker injuries." *See Schick v. Shirey*, 716 A.2d 1231, 1237 (Pa. 1998) (quoting *Poyser v. Newman & Co.*, 522 A.2d 548, 550 (Pa. 1987)). Pennsylvania thus has a substantial interest in determining whether immunity has been waived in this case. In light of Pennsylvania's fundamental policy interest in applying its Workers' Compensation Act to in-state injuries, the Court finds Pennsylvania has a materially greater interest than New York in this issue.[5]

---

[5] Northtec also cites *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52 (3d Cir. 1994), for the proposition that "Pennsylvania courts enforce choice of law clauses entered into by sophisticated businesses operating at arms-length," Northtec's Opp'n to Manpower's Mot. for Summ. J. 7, but *Kruzits* is not controlling here. In that case, the Third Circuit Court of Appeals applied Illinois law to interpret an indemnity provision in an agreement between an employer and a third party pursuant to the agreement's choice of law clause, notwithstanding the employer's argument that the indemnity provision was not specific enough to overcome its immunity under the Pennsylvania Workers' Compensation Act. *Kruzits*, 40 F.3d at 55–56. The agreement containing the choice of law and indemnity provisions was a financing agreement through which the employer obtained funds to purchase equipment for its business. *See id.* at 54. The indemnity issue arose after an employee who was injured while using financed equipment brought a strict products liability action against the financing company, which held title to the equipment for the sole purpose of perfecting its security interest, but exercised no operational control over it. *See id.* In holding the application of Illinois law would not infringe a strong Pennsylvania policy interest, the court emphasized that the employee "ma[de] no claim that [the financing company] caused his personal injury." *Id.* at 56. Here, in contrast, Bookard alleges her injuries were "a direct and proximate result" of Northtec's "careless and negligent conduct," Am. Compl. ¶¶ 24, 31, bringing this case within the immunity provision of the Pennsylvania Workers' Compensation Act, *see* 77 Pa. Cons. Stat. § 481(b) (permitting an employee to bring an action against a third party that caused injury or death to the employee, but immunizing employers from liability for indemnity for such third-party actions absent an express written indemnity agreement). Moreover, the court's ultimate holding was a narrow one—namely, that "under Pennsylvania choice of law rules, [a] contractual choice of law provision[] contained in a financial agreement that enables an employer to purchase plant equipment is binding on the parties." *Kruzits*, 40 F.3d at 56. The agreement at issue in this case is not merely a financial agreement but a staffing agreement in which Manpower agreed to supply employees to work in Northtec's facilities. *Kruzits* is therefore inapposite.

Although the parties do not address the issue, the Court also finds Pennsylvania law would govern the immunity issue absent an effective choice of law by the parties. Under Pennsylvania law, the first step in the choice of law analysis entails "determining if there is an *actual* or real conflict between the potentially applicable laws." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (citation omitted). If an actual conflict exists, the court must "examine the governmental policies underlying each law, and classify the conflict." *Id.* If only one state's governmental interests would be impaired by application of the other state's law, then there is a "false conflict," and the court "should apply the laws of the state whose interests would be harmed if its laws were not applied." *Id.* at 229 (internal quotation marks and citation omitted). If both jurisdictions' interest would be impaired by the application of the other's laws, however, there is a "true conflict," and the court must "apply the law of the state with the most significant contacts or relationships with the particular issue." *Id.* at 230 (internal quotation marks and citation omitted).

As noted, Pennsylvania and New York law differ as to how an employer waives its immunity under each state's workers' compensation law, and these differences are material to the outcome of this case. It is not clear, however, that these differences establish a true conflict. While Pennsylvania's governmental interests would be impaired by the application of New York law for the reasons discussed above, Northtec has not identified a governmental interest of New York that would be impaired by the application of Pennsylvania law on the narrow issue of whether Manpower waived its workers' compensation immunity. Even if there is a true conflict, Pennsylvania has a greater interest in having its law applied. Pursuant to the SSA, Manpower assigned Bookard to work for Northtec in Pennsylvania, Bookard was injured at Northtec's facility in Pennsylvania, and Manpower provided workers' compensation benefits to Bookard pursuant to

Pennsylvania's Workers' Compensation Act. Pennsylvania thus has a substantial interest in determining whether Manpower waived its immunity under the Pennsylvania workers' compensation system. While New York may have an interest in applying its law to a contract to which a company headquartered in-state is a party, Pennsylvania's interest in applying its law is greater for the reasons discussed above. As a result, the Court will not enforce the SSA's choice of law provision and will apply Pennsylvania law.

Having resolved the choice of law issue, the Court next turns to whether Manpower waived its immunity in the SSA's indemnification provision under Pennsylvania law. Under the immunity provision of the Pennsylvania Workers' Compensation Act, "a third party may not seek contribution or indemnity from the employer, even though the employer's own negligence may have been the primary cause of the employee's injury, absent an express provision for indemnity in a written contract." *Bester*, 619 A.2d at 306–07 (internal citation omitted). To satisfy the requirement of an express provision for indemnity, "[t]he intent to indemnify against claims by employees of the alleged indemnitor . . . must clearly appear from the terms of the agreement." *Id.* at 307. Use of "general indemnity language such as 'any or all' or 'any nature whatsoever' is insufficient." *Id.* The parties "must specifically use language which demonstrates that a named employer agrees to indemnify a named third party from liability for acts . . . which result in harm to the employees of the named employer." *Id.* at 308–09. The provision "must either explicitly state that it covers such claims, or state that the employer's indemnity obligations are not limited by the protections of the Workers' Compensation Act." *Muth v. Rondel at Atlas Terrace, LLC*, No. 08-0476, 2009 WL 50173, at *3 (E.D. Pa. Jan. 8, 2009). "Absent this level of specificity in the language employed in the contract of indemnification, the Work[ers'] Compensation Act precludes any liability on the part of the employer." *Bester*, 619 A.2d at 309.

The Court agrees with Manpower that the SSA's indemnification provision does not waive its immunity under these standards. Section 7(a) of the SSA provides, in relevant part,

> each party shall indemnify, defend, and hold harmless the other party and its parent, subsidiaries, and affiliates . . . from and against its proportionate share of any and all claims, demands, losses, liabilities, damages, expenses (including reasonable attorney fees) and causes of action (hereinafter "Claims") for: (i) bodily injury to, or death of, any person, *including without limitation the employees*, agents, contractors, licensees, and invitees *of the party being indemnified*, unless such injury or death is covered by indemnified party's workers compensation policy, . . . but . . . only to the extent such Claims are caused by or result from the negligence, gross negligence, recklessness or willful misconduct of the indemnifying party . . . in the performance of Services or obligations defined in this Agreement.

SSA § 7(a) (emphasis added). As an initial matter, the fact that the parties agreed to indemnify each other from "any and all claims" for bodily injury to "any person" is plainly insufficient, under Pennsylvania law, to show that Manpower agreed to indemnify Northtec for claims by Manpower's own employees. *Bester*, 619 A.2d at 307; *see also Finney*, 2009 WL 3719382, at *4 (holding an indemnification provision in which an employer agreed to indemnify a third party "from any and all damages, liabilities, claims . . . associated with any injury to or death of any person . . . arising out of or in any way associated with [certain conduct by the employer or its employees]" was insufficient to waive the employer's immunity under Pennsylvania law). The provision goes on to specify that the claims for which indemnification will be provided include claims for bodily injury to "the employees . . . of the party being indemnified." SSA § 7(a). But Manpower is the *indemnifying* party—not the *indemnified* party—with respect to Northtec's claims. This provision lacks specific language demonstrating an intent to indemnify against claims by the *indemnifying* party's own employees. Absent such language, it is insufficient to waive Manpower's immunity under the Pennsylvania Workers' Compensation Act.[6] *Cf. Hackman v.*

---

[6] Section 7(a) also provides that claims for bodily injury will be indemnified "unless such injury or death is covered by indemnified party's workers compensation policy." This limitation is not

*Moyer Packing*, 621 A.2d 166, 168 (Pa. Super. Ct. 1993) (holding an indemnification provision had the requisite level of specificity where it provided that the employer agreed to indemnify the third party "against any and all claim or claims brought by the agents, workmen, servants or employees of [the employer] for any alleged negligence or condition, caused or created, [in] whole or in part, by [the third party]" (second alteration in original)).

Section 7(b) suffers from the same deficiency.[7] In that provision, Manpower agreed "to defend, indemnify and hold harmless [Northtec] from and against any and all Claims against [Northtec] in which liability is premised on [Northtec] being the employer, joint employer or co-employer of any of the Assigned Employees . . . ." SSA § 7(b). Northtec argues that in this provision, Manpower "clearly and unequivocally expressed its intent to indemnify [Northtec] against claims brought by Manpower employees." Northtec's Resp. to Manpower's Mot. for Summ. J. 10. The Court disagrees. This provision states only that Manpower will indemnify Northtec from claims in which liability is premised on Northtec being the employer, joint employer, or co-employer of an assigned employee. It does not state that Manpower will indemnify Northtec for claims *by* Manpower employees. Because the provision lacks plain language demonstrating that Manpower agrees to indemnify Northtec for claims by Manpower's

---

implicated here. Manpower argues this language underscores that § 7(a) was intended to preserve its statutory immunity because Manpower is an indemnified party and Bookard's claims were, in fact, covered by Manpower's workers compensation party. But with respect to Northtec's contractual indemnity claims, Manpower is the *indemnifying* party, as noted above. Section 7(a) thus provides an exception to Manpower's duty to indemnify Northtec for claims of bodily injury only if the injury is covered by *Northtec*'s workers compensation policy, which is not the case here.

[7] Northtec's Third-Party Complaint identified § 7(a) of the SSA as the source of Manpower's obligation to indemnify Northtec for Bookard's claims. Northtec's Third Party Compl. ¶¶ 23, 26, 31. In its opposition to Manpower's motion for summary judgment, however, Northtec invokes only § 7(b) as the source of Manpower's indemnification obligations.

employees, it is also insufficient to waive Manpower's statutory immunity.[8] *Cf. Muth*, 2009 WL 50173, at *4 ("An indemnification clause may require an employer to indemnify tort claims made by the employer's own employees when the clause explicitly states that it applies to such claims, or when the clause explicitly states that the employer waives the protections of the Worker's Compensation Act.").

Because neither of the foregoing indemnification provisions is sufficient to waive Manpower's immunity from third-party indemnity actions under the Pennsylvania Workers' Compensation Act, and because Northtec's claims against Manpower are based solely on those provisions, summary judgment will be granted in favor of Manpower on Northtec's claims.[9]

---

[8] The Court also notes § 7(b) does not appear to be implicated in this case because nothing in Bookard's Amended Complaint suggests her claims against Northtec arise from Northtec's status as her employer. On the contrary, the Amended Complaint alleges Northtec "[a]t all times relevant . . . leased, occupied, owned, controlled, managed, and operated" both the facility where the accident occurred and the Pack Tiger, Am. Compl. ¶ 10, and "Bookard was in the course and scope of her employment with Manpower . . . and lawfully present on the business premises of [Northtec]," *id.* ¶ 13. Bookard's claims and Northtec's liability thus appear to be based on Northtec's negligence as the owner and operator of the premises and the Pack Tiger, not on Northtec being Bookard's employer. *See, e.g.*, *id.* ¶¶ 21, 28 (alleging Northtec "had a duty to persons, such as Bookard, to exercise due care in their maintenance, use, and upkeep of the Subject Property and of the Pack Tiger so as to avoid causing accidents, injuries, and other damages").

[9] Northtec also argues Manpower waived the issue of workers' compensation immunity by failing to assert immunity as an affirmative defense. This argument lacks merit. As Manpower notes, the Pennsylvania Supreme Court has rejected the contention that the workers' compensation immunity is an affirmative defense which may be waived if not timely asserted, instead holding the issue "may be raised at any time," including "by the court sua sponte." *LeFlar v. Gulf Creek Indus. Park No. 2*, 515 A.2d 875, 879 (Pa. 1986). Northtec thus did not waive the issue of workers' compensation immunity by raising it for the first time in a motion for summary judgment. *See Saemmer v. Constr. Mgmt. Tech., Inc.*, No. 08-1028, 2010 WL 2089278, at *3 (E.D. Pa. May 21, 2010) (holding a contractor did not waive its claim of immunity as a "statutory employer" under the Pennsylvania Workers' Compensation Act by raising the issue for the first time in a summary judgment motion, citing *LeFlar*).

### B. Northtec's Motion

Northtec also moves for summary judgment on Manpower's counterclaim pursuant to the SSA's indemnification provision. In its counterclaim, Manpower seeks to hold Northtec liable "for the amount of any verdict or judgment recovered by [Bookard] against [Northtec] *payable by Manpower*." Manpower's Countercl. ¶ 7 (emphasis added). Because Manpower is immune from Northtec's indemnity claims, Manpower is not liable for any recovery Bookard obtained against Northtec; hence, the counterclaim is moot.[10] Northtec's motion for summary judgment as to the counterclaim will therefore be dismissed as moot.

**CONCLUSION**

For the reasons set forth above, the Court will grant Manpower's motion for summary judgment and dismiss as moot Northtec's motion for summary judgment.

An appropriate order follows.

BY THE COURT:


 /s/ Juan R. Sánchez
 Juan R. Sánchez, C.J.

---

[10] Indeed, Manpower's counsel confirmed as much at oral argument, stating that if Manpower were successful, it would be "out of the case," and that was all Manpower was seeking. Tr. 9, Aug. 20, 2019.